IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIA C. FERNANDEZ        *
                          *
      v.                  *        Civil No. JFM-04-3009
                          *
LT. GEN. KEITH B. ALEXANDER,      *
DIRECTOR, NATIONAL SECURITY       *
AGENCY                    *
                        *****

MEMORANDUM

Plaintiff Maria Fernandez brings this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964 against Defendant Lieutenant General Keith Alexander, in his official capacity as Director of the National Security Agency ("NSA"). Fernandez alleges that individuals at the NSA discriminated against her because of her national origin, gender, and participation in the equal employment opportunity ("EEO") process. The NSA moves to dismiss the case or, in the alternative, for summary judgment. Fernandez moves for an opportunity for discovery under Federal Rule of Civil Procedure 56(f). For the reasons stated below, the NSA's motion is treated as a motion for summary judgment with regard to Count I, and granted. The NSA's motion is treated as a motion to dismiss with regard to Count II, and denied. Fernandez's motion for an opportunity for discovery is denied as to Count I and granted as to Count II.

I.

Fernandez, a naturalized American citizen of Cuban origin, joined the NSA as a civilian employee in 1983. In August 1998, she accepted the position of Branch Chief of an organization called P211 that was located in the Agency's Tactical SIGINT Program Office ("P2"). As the P211 Branch Chief, Fernandez initially reported to John M., the Division Chief of the P21 Division, and then to Lieutenant Colonel Thomas K., the Deputy Chief of P21 as of September

1998.[1]  Thomas K. subsequently replaced John M. as P21's Division Chief in June 1999. Fernandez supervised four employees in P211, three of whom were male (one civilian, two military).

Fernandez and the NSA tell different stories about the work environment in P21. According to Fernandez, "women received less favorable treatment than men."  Fernandez Aff. of Factual Allegations ¶ 6.  Fernandez alleges that "women supervisors were criticized and undermined and their male subordinates were given access to information and documents." *Id.* According to the NSA, and consistent with the overwhelming evidence in the record, Fernandez's problems at P21 stemmed from her domineering and controlling personality. Co-workers of Fernandez describe her as an extremely difficult person with whom to work.  Her former subordinate Christopher S. called her "erratic," "unpredictable," "control oriented," and "defensive."  Christopher S. Aff. ¶ 5.  John M. testified that Fernandez had problems as a manager because she was "very controlling."  John M. Aff. ¶ 5.  Michele S., Chief of the Budget Branch of P2, testified that people in the office thought Fernandez had a psychological problem and "might need help."  Michele S. Aff. ¶ 23.

On September 29, 1999, Thomas K. proposed and presented to Fernandez a written letter of reprimand based on several alleged instances of disrespectful and insubordinate behavior.  *See* Def.'s Mot. to Dismiss, Ex. 13.  The letter recounted several occasions in which Fernandez was verbally abusive to others, and one instance in which she refused to comply with Thomas K.'s order to rescind an e-mail she had sent around the office describing an incident between her and

---

[1]Pursuant to the protective order entered in this case, NSA personnel other than Fernandez will only be identified by their titles and/or first names and last initials.

Lieutenant Colonel Charlene L., the chief of another branch within the P21 Division.  In this e-mail, entitled "MFR - Incident Report," Fernandez claimed Charlene L. cursed at her and threatened her.[2]  *See* Def.'s Mot. to Dismiss, Ex. 16.

On October 12, Fernandez provided written and oral responses to the proposed letter of reprimand and advised management of her intent to contact an EEO counselor.  Fernandez initiated contact with an EEO counselor that day.  After a lengthy discussion, Fernandez determined that her issues were not EEO based, and she signed a non-EEO related "Counseling form."  *See* EEO Counselor's Report, Def.'s Mot. to Dismiss, Ex. 19 at 2.  On October 19, Colonel Leslie M., Chief of P2, upheld the decision to issue Fernandez the reprimand.  At various times, Fernandez has claimed Leslie M. "fired" her that day, while at other times she has said he merely ordered her to take leave.  *Compare* Fernandez EEO Aff. at 10 *with* Compl. at 6.  Leslie M. claims he and Fernandez both agreed she should leave P2, and he offered his assistance in finding her a new position.  Leslie M. Aff. ¶ 6.  His account is bolstered by the Employee Relations Representative who attended the meeting, Michael C., who insists Leslie M. "NEVER ordered Ms. Fernandez to take leave."  Michael C. Aff. ¶ 9.

On October 26, Fernandez returned to the EEO office and stated she had recently taken EEO courses and, based on the material presented, now believed she had been subjected to a hostile work environment based on her gender and possibly her national origin.  Fernandez filed a formal EEO complaint on December 21, in which she alleged that Charlene L., Thomas K., and Leslie M. discriminated against her from at least January 1999 through October 19, 1999, based

---

[2]Charlene L. admits using a curse word but claims she did not threaten Fernandez.  Charlene L. Aff. ¶ 9.

on her gender, age, national origin, and participation in the EEO process, culminating in a written reprimand and her "dismissal" from her position. *See* Pl.'s Opp'n, Ex. I.  More specifically, Fernandez alleged Charlene L. favored a male subordinate (Christopher S.) over her, humiliated her in public, and used profanity in a threatening way toward her.  Thomas K. allegedly favored Christopher S., encouraged insubordination, excluded Fernandez from correspondence, and made sexual innuendos about Fernandez's relationship with a military officer.  Leslie M. allegedly retaliated against Fernandez's participation in the EEO process by upholding the written reprimand.

      The NSA conducted a formal investigation into Fernandez's complaint and issued an Investigative Summary.  *See* Def.'s Mot. to Dismiss, Ex. 3.  On January 31, 2001, following the investigation, Fernandez requested a hearing before the Equal Employment Opportunity Commission ("EEOC").  On August 2, 2002, however, the EEOC Administrative Judge dismissed the hearing and ordered the Agency to take appropriate action because Fernandez engaged in "intolerable" behavior during the course of discovery.  *See* Def.'s Mot. to Dismiss, Ex. 4.  The judge noted that Fernandez had (1) unnecessarily delayed the case with numerous objections to a protective order the NSA desired; (2) abruptly cancelled two scheduled depositions; and (3) refused to participate in her own deposition when the NSA would not allow a court reporter she had hired to attend.  The judge sanctioned Fernandez in the amount of $308.50 for reimbursement of fees the NSA incurred due to her failure to proceed in the matter. The NSA issued a final agency decision on September 17, 2002, determining that Fernandez was not discriminated against.  *See* Def.'s Mot. to Dismiss, Ex. 5.  Fernandez appealed, and the Office of Federal Operations upheld the agency decision on March 24, 2004.

Fernandez alleges that, while her EEO complaint was pending, she was repeatedly retaliated against. She filed numerous complaints with the EEO office, including at least four complaints in 2001, three in 2002, and one in 2004. Many of these complaints alleged discrimination in the processing of previous complaints by Fernandez. During this time, Fernandez was working in a new position in a different section of the NSA called N712. Fernandez obtained this position in November 1999.

On February 29, 2000, three months after Fernandez's move to N712, Thomas K. belatedly issued her personal performance process evaluation ("P3"), which had come due on April 6, 1999. Fernandez received a rating of 3.3, indicating she had "met objectives" from October 1, 1998 to April 6, 1999. *See* Def.'s Mot. to Dismiss, Ex. 11. Fernandez alleges Thomas K. also issued a P3 at this time for her performance from July 1999 to October 15, 1999, and included unfavorable information in this evaluation: "On one occasion, Ms. Fernandez forwarded information that was not ready for field consumption, however, this did not adversely affect the TSPO." Fernandez EEO Aff. at 11.

Fernandez further alleges that two supervisors in N712, Nancy N. and Nancy D., retaliated against her beginning in early 2002, immediately after the Office of General Counsel ("OGC") informed the Director of N712 about Fernandez's December 1999 EEO complaint. Fernandez avers that Nancy N., her supervisor in 2001-02, retaliated against her, but Fernandez does not specify a single incident. *See* Fernandez Aff. of Factual Allegations ¶ 11. Fernandez alleges Nancy D., her supervisor in 2002 until October 2003, retaliated against her by giving her verbal approval to work flexible work hours due to a medical condition but then gave her such a heavy workload that she was forced to work long hours and weekends to meet deadlines. Nancy

D. then allegedly held Fernandez to a schedule of not more than a normal workday, refused her requests to work the extra hours necessary to complete assignments, and did not provide her with the contractor support that was given to at least one other employee performing the same duties, Thomas D.

Fernandez alleges three attorneys from the OGC, Paul F. M., Christopher D., and Dawn B., retaliated against her by threatening to alter her EEO records, advising her former co-workers they could not communicate with her for any reason, falsely accusing her of willfully disclosing confidential information, and helping N712 management issue a "Leave Letter" to her in May 2003. Nancy D. and Dawn B. issued the Leave Letter, which advised Fernandez she must adhere to a set work schedule or face disciplinary action. Fernandez claims such letters are usually issued to employees with deficient work attendance, and her attendance was not deficient. Fernandez challenged the letter and it was later rescinded. Nancy D. then allegedly falsified Fernandez's performance evaluation in the fall of 2003, denied her access to records she needed to do her work, and falsely advised a supervisor that Fernandez had created a hostile work environment for Nancy D. in April 2004.

In her complaint, Fernandez alleges that these retaliatory actions by employees of N712 and the OGC resulted in her failure to receive a promotion to GG14 in June 2004. *See* Compl. at 9. In her latest brief, Fernandez goes a step further and claims that the NSA's decision not to promote her was based on a retaliatory motive. *See* Pl.'s Resp. to Def.'s Supplemental Mem. at 11. The NSA claims the decision not to promote her was due to insufficient funds. Fernandez later switched positions again and joined another section of NSA called F1J. She was eventually promoted to GG14 in 2005, the following promotion cycle.

On December 17, 2004, Fernandez filed a formal complaint with the EEO alleging that she was discriminated against based on disability, national origin, gender, age and reprisal when she was not promoted in June 2004. In May 2006, the EEO dismissed the administrative complaint, apparently because Fernandez had filed a Title VII lawsuit in this court on September 20, 2004, three months prior to filing her administrative complaint.

In her Title VII complaint, Fernandez drops any allegation of age discrimination and tempers her claim that she was fired by Leslie M. in October 1999 -- she now alleges Leslie M. ordered her to stop almost all of the work she was doing and to take leave. Compl. at 6. Otherwise, Fernandez asserts essentially the same claim of gender, national origin, and reprisal discrimination, based on conduct by members of P2, that appeared in her administrative complaint.[3] This claim will be referred to as Count I. Fernandez also brings a claim of retaliation based on conduct from November 1999 to the present by members of other divisions of the NSA.[4] This claim will be referred to as Count II. I will examine the two claims separately.

II.

In Count I, Fernandez alleges a hostile work environment claim, a disparate treatment

---

[3] All of this conduct occurred between 1998 and October 1999, with the exception of Thomas K's issuance of Fernandez's P3 in February 2000.

[4] In her complaint, Fernandez includes language suggesting she also brings a gender and national origin discrimination claim based on conduct from November 1999 to the present. Compl. at 9. However, in her latest brief Fernandez disavows this claim and insists her "allegations of civil rights violations within the N712 organization are based exclusively on retaliation/reprisal, and not any other form of discrimination." Pl.'s Resp. to Def.'s Supplemental Mem. at 3.

claim, and a retaliation claim, all based on conduct by members of P2.[5]  None of these claims survives summary judgment.[6]

A.

To establish a hostile work environment claim, a plaintiff must show that: (1) the harassment was unwelcome; (2) the harassment was based on her gender or national origin; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).  With regard to the second prong, a plaintiff must show that but for her gender or national origin, she would not have been the victim of the alleged discrimination.  *Id.*  Fernandez's hostile work environment claim fails because she does not show that the alleged harassment by Charlene L., Thomas K., or other members of P2 was based on Fernandez's gender or national origin.

Fernandez points to the affidavits of civilian employees Michele S. and Sharon P., a

---

[5]Fernandez indicates in one of her briefs that she may amend her complaint to add a constructive discharge claim, but she has not done so.  On the existing record, such a claim would not survive summary judgment because Fernandez does not provide evidence of deliberateness of the employer's action.  *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).

[6]Summary judgment is proper where there is no genuine issue of material fact and the moving party proves that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56. When assessing a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Id.* at 587.  The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Mere speculation by the non-moving party cannot create a genuine issue of material fact.  *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001).

branch chief in P21, as evidence of harassment based on gender.  Although Michele S. testified that Thomas K. "treated men better than women all the time," she also testified that she never felt discriminated against because of her gender and never saw any discrimination involving Fernandez.  Michele S. Aff. ¶¶ 18, 23.  Michele S. described the divide in the office as based on military-civilian status rather than gender.  *Id.* ¶ 23.  Sharon P. testified she believed that Fernandez was "exposed to a hostile work environment" and noted that "the work environment was difficult because she was a pure female civilian."  Sharon P. Aff. ¶¶ 23, 25.  However, Sharon P. did not recount any specific acts of harassment, directed at either Fernandez or her, that she attributed to gender discrimination.  Sharon P. did mention that her male superiors deliberately bypassed her in the chain of command, *id.* ¶ 23, but deliberately bypassing a superior does not rise to the level of actionable harassment, nor is it clear that this behavior was motivated by Sharon P.'s gender rather than her civilian status.

      The only incident Fernandez describes that even touches on national origin is a remark allegedly made by Thomas K. that another Hispanic NSA employee was "worthless."  Fernandez EEO Aff. at 5.  There is no evidence this comment had anything to do with the Hispanic employee's national origin.

      In sum, Fernandez does not offer evidence, besides the conclusory statements in her briefs and affidavits, to show that the alleged harassment was based on her gender and national origin.  *See Causey*, 162 F.3d at 802 ("[C]onclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment.").  To the contrary, the evidence on the summary judgment record indicates that, to the extent Fernandez was treated differently than others, it was due to her personality conflicts with military (i.e. non-civilian) co-workers.

B.

To make out a prima facie case of disparate treatment, a plaintiff must show, *inter alia*, she was subjected to an adverse employment action. *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 991 (D. Md. 1999). An adverse employment action is an action that negatively effects "the terms, conditions, or benefits" of employment. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001). Simple harassment does not amount to an adverse action. *See Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 393 (D. Md. 2002). Among the alleged harassment based on gender and national origin by members of P2, the only potential adverse employment action was Thomas K.'s issuance of the letter of reprimand. *See Nye v. Roberts*, 145 F. App'x 1, 6 (4th Cir. 2005) (holding that a letter of reprimand could constitute an adverse employment action under the employer's system of "progressive discipline").

To establish a prima facie case of discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that she is a member of the class protected by Title VII; (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). If the plaintiff proves a prima facie case, the burden shifts to the employer, who must articulate a non-discriminatory reason for the difference in disciplinary enforcement. *Id.* If the employer articulates such a non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the employer's reasons are pretextual. *Id.*

Fernandez has not established a prima facie case because she has not shown that the

disciplinary measures enforced against her were more severe that those enforced against male employees or employees not of Cuban origin.[7]  Moreover, even if Fernandez had established a prima facie case, Thomas K. articulated legitimate, non-discriminatory reasons for the reprimand.  Within the letter, he listed numerous incidents of inappropriate behavior by Fernandez.  Fernandez has failed to show that the articulated reasons for the reprimand are pretextual, as is her burden.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 319 (4th Cir. 2005) (affirming grant of summary judgment to employer where plaintiff failed to show the employer's stated reason for the adverse employment action was pretextual).

### C.

The anti-retaliation provision of Title VII applies only to "employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2409 (2006).  This means "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*  The provision's standard for judging harm is an objective one, and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 2415.

To establish a prima facie case of discriminatory retaliation under Title VII, a plaintiff must demonstrate a causal connection between the materially adverse employer action and her

---

[7]Fernandez makes a conclusory allegation that the behavior criticized in the letter of reprimand was tolerated when exhibited by Charlene L., a woman of U.S. national origin, but Fernandez offer no evidence that Charlene L. engaged in the inappropriate behavior attributed to Fernandez in the letter.

11

engagement in a protected activity. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). As in the disparate treatment context, the employer may rebut the plaintiff's prima facie case by articulating non-retaliatory reasons for its actions. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). The burden then shifts back to the plaintiff to prove the pretextual nature of those reasons. *Id.*

Fernandez's complaint alleges that her superiors in P2 retaliated against her in violation of Title VII after she initiated contact with the EEO counselor on October 12. Specifically, she alleges that (1) Thomas K. subjected her work to increased scrutiny and delayed and put unfavorable information in her P3, and (2) Leslie M. upheld the "unjustified" letter of reprimand, ordered her to stop almost all of the work she was doing, and ordered her to take leave. Compl. at 6.

The evidence in the record does not show that Thomas K.'s actions were materially adverse to a reasonable employee. First, besides Fernandez's bare allegation, there is no evidence of increased scrutiny of Fernandez's work. Second, there is no evidence the delay in her P3 cost her a promotion or harmed her in any way. Third, the "unfavorable information" in the evaluation was merely the observation that, on one occasion, "Fernandez forwarded information that was not ready for field consumption, however, this did not adversely affect the TSPO." Fernandez EEO Aff. at 11. The record indicates that this was the *only* comment in the entire evaluation that could be construed as negative, and that overall Fernandez received a rating of average or above average. Thomas K. Aff. ¶ 8.

Assuming the actions of Leslie M. were materially adverse, Fernandez's only evidence that his actions were motivated by her participation in the EEO process is the fact that the actions

took place subsequent to her contact with the EEO counselor.[8]  Leslie M. provided legitimate, non-discriminatory reasons for his actions.  The letter of reprimand speaks for itself, and Leslie M. said he moved Fernandez out of the office because she could not get along with others in P21.  Leslie M. Aff. ¶ 6.  Fernandez has not shown that these reasons were pretextual.  *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) ("mere knowledge on the part of an employer that an employee . . . has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee").

D.

Fernandez argues I should not rule on a motion for summary judgment as to Count I at this stage because she is entitled to further discovery.  In general, summary judgment should not be granted when the nonmoving party has not had the opportunity to discover information that is essential to her opposition.  *See* Fed. R. Civ. P. 56(f); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).  If a party believes that more discovery is necessary for her to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating that she could not properly oppose a motion for summary judgment without a chance to conduct discovery.  *Harrods*, 302 F.3d at 244.  "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition."  *Id.*  The affidavit should "particularly specif[y] legitimate needs for further discovery."  *Nguyen v. CNA*

---

[8]The same is true for Thomas K.'s actions.  Fernandez provides no evidence of discriminatory intent besides the timing of the actions.

*Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).

In support of her motion for an opportunity to conduct discovery on Count I, Fernandez has submitted an affidavit stating:

> At present, I have not yet been permitted to conduct discovery because the time for discovery under the Court's local rules has not yet begun. Therefore I have not been able to obtain evidence that would supply facts essential to justify my opposition to Defendant's summary judgment motion. I have a good faith belief that discovery will permit me to further establish facts, which support my claims as set forth in my Complaint and in my Memorandum.

Fernandez Aff. of Factual Allegations ¶ 25. This affidavit is not particularized; it does not articulate what facts Fernandez expects to uncover in discovery or from what sources. Moreover, the purpose of the affidavit is to ensure Fernandez is acting in good faith, and the evidence on the record calls her faith into question.

According to the EEOC Administrative Judge, Fernandez engaged in "intolerable" behavior during the course of discovery in the administrative phase of this proceeding. She unnecessarily delayed discovery with numerous objections to the wording of a protective order. Without ever seeking the judge's counsel, she unreasonably refused to submit to a deposition when the NSA would not allow her own personal court reporter on site. The record reflects that any inability Fernandez has in marshaling evidence to oppose the NSA's motion for summary judgment is due to her own conduct in the administrative phase.

Further, the evidence in the record is overwhelming that Fernandez's problems in P21 were caused not by any unlawful discrimination but by the fact that she is a difficult person with whom to work. When combined with the lack of a particularized affidavit and Fernandez's past overstatements of her claim (alleging age discrimination and averring she was fired), this evidence strongly suggests Fernandez intends to engage in a fishing expedition. Her request for

14

further discovery at to Count I is denied.

### III.

In Count II of the complaint, Fernandez alleges she was retaliated against by employees of the NSA (outside of P2) from November 1999 to the present due to her participation in the EEO process. On this count, I will treat the government's motion as a motion to dismiss. I choose not to rule on a motion for summary judgment on Count II for two reasons. First, Fernandez's Rule 56(f) affidavit in support of her motion for an opportunity for discovery on Count II is slightly more particularized than her Count I affidavit. Second, and much more importantly, it appears Fernandez had no opportunity to conduct discovery in the administrative phase, through no fault of her own. Her attorney testified that the NSA's EEO office completed an investigation of Fernandez's Count II retaliation claim but refused to turn the investigatory file over to Fernandez. Greidinger Aff. ¶¶ 3, 7. The NSA then allegedly used parts of this file as exhibits to its motion to dismiss Count II. The NSA does not deny this allegation nor offer any explanation.

In support of its motion to dismiss, the NSA argues Fernandez has not alleged actions by NSA that were harmful to the point that they would dissuade a reasonable worker from making or supporting a charge of discrimination.[9] *See Burlington N.*, 126 S. Ct. at 2409. To the

---

[9]For purposes of a motion to dismiss, a court must accept as true all well-pleaded allegations of the complaint and must construe the factual allegations in the light most favorable to the plaintiff. *Hall v. Virginia*, 385 F.3d 421, 427 (4th Cir. 2004). A complaint should not be dismissed under Rule 12(b)(6) unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. *Id.* In *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), the Supreme Court held that a complaint in an employment discrimination lawsuit need not allege specific facts establishing a prima facie case of discrimination. *Id.* at 510-511. However, the Fourth Circuit has not interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim. *Bass v. E.I. Dupont*

contrary, on the face of the complaint Fernandez alleges that the NSA retaliated against her by: 1) creating documentation that falsely claimed she could not perform at a higher level; 2) preparing inadequate and inaccurate performance evaluations; 3) preparing inaccurate documents to falsely suggest she was insubordinate over time and attendance issues; 4) issuing a letter to her regarding the amount of leave she was taking for a chronic medical condition; and 5) undermining her with management.  Without looking beyond the complaint, I find that, if true, these actions might be harmful enough to dissuade a reasonable worker from making or supporting a charge of discrimination.

      A separate order is being entered herewith.

<u>August 24, 2006</u>             <u>/s/                        </u>

Date             J. Frederick Motz
                    United States District Judge

---

*de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).